# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Andrew J. SHAFRAN
### Boatswain's Mate Third Class (E-4), U.S. Coast Guard

### CGCMG 0386
### Docket No. 1480

### February 26, 2024

General court-martial sentence adjudged on 18 September 2021.

| | |
|---|---|
| Military Judge: | CDR Paul R. Casey, USCG |
| Appellate Defense Counsel: | Mr. Philip D. Cave, Esq. |
| | LCDR Kristen R. Bradley, USCG (argued) |
| Appellate Government Counsel: | LT Elizabeth M. Ulan, USCG (argued) |
| | LCDR Daniel P. Halsig, USCG |

## ON RECONSIDERATION BEFORE
## THE COURT EN BANC[1]

Judgment of the Court: JUDGE, joined by HAVRANEK, PELL, and PARKER.
Dissenting in part: BRUBAKER, joined by McCLELLAND and HERMAN.

JUDGE, Judge:

On 6 October 2023, we issued an en banc opinion affirming the findings and sentence. Appellant timely filed a motion urging us to reconsider our opinion without the participation of Judges Tasikas and Parker, whom he asserted were disqualified. After careful consideration of the motion, Judge Tasikas decided to recuse himself not due to any actual conflict, but to avoid even the appearance of conflict based on the particular circumstances of the case. Judge Parker declined to recuse herself, finding no basis to do so. We then granted the motion for reconsideration as well as Appellant's motion to raise an additional assignment of error (AOE) in light of *United States v. Jeter*, 84 M.J. 68 (C.A.A.F. 2023). Having reconsidered the case and the additional AOE without Judge Tasikas's participation, we again affirm the findings and sentence.

---

[1] Judges Mannion and Tasikas did not participate in this decision.

A general court-martial of members with enlisted representation convicted Appellant, contrary to his pleas, of one specification of abusive sexual contact and one specification of providing alcohol to a minor, in violation of Articles 120 and 134, Uniform Code of Military Justice (UCMJ). The members sentenced Appellant to confinement for 180 days, reduction to E-1, and a bad-conduct discharge.

Appellant raises a total of nine assignments of error (AOEs), paraphrased and renumbered as follows:

I. There is legally and factually insufficient evidence supporting Appellant's conviction for abusive sexual contact;

II. The Article 134 specification (providing alcohol to a person under the age of 21) is fatally defective because it does not allege a crime or words of criminality;

III. The military judge erred by instructing the members that Appellant was charged with providing alcohol to a minor when the relevant charge neither alleged Ms. E.F. was a minor nor cited any standard under which Ms. E.F. could be considered a minor;

IV. There is legally and factually insufficient evidence supporting Appellant's conviction for providing alcohol to a person under 21 years of age;

V. Ms. E.F.'s unsworn statement discussing the impact of conduct for which Appellant was acquitted violated Rule for Courts-Martial (R.C.M.) 1001(c);[2]

VI. The convening authority erred by failing to provide reasons for his denial of Appellant's deferment request;

VII. Dr. A.H. exceeded the scope of his approved expertise by providing improper and speculative psychological interpretation of Ms. E.F.'s conduct and gave the equivalent of "human lie detector" testimony;

VIII. Appellant was deprived of his right to a unanimous verdict; and

IX. The convening authorities violated Appellant's equal protection rights when they solicited, received, and presumptively considered panel members' race and gender in selecting who would serve on the court-martial.

In addition, the Court specified the following issues:

---

[2] Unless otherwise specified, all references are to the Manual for Courts-Martial (2019 ed.).

(1) Whether the Article 134 specification is fatally defective because it omitted a required mens rea; and

(2) Whether the record contains notice of a mens rea of at least recklessness that also suffices as notice of criminality.[3]

We have considered AOEs I, III, IV, V, and VIII but summarily decline to grant relief.[4] We discuss the remaining issues. We conclude there was no prejudicial error and affirm.

## I. Background

Ms. E.F. was working as a cashier when Appellant came through her line, made conversation, and asked for her phone number. She declined, but he found her profile and initiated contact through a dating application they both used. Ms. E.F.'s profile page accurately listed her age as 20 years old. After multiple offers, Ms. E.F. accepted Appellant's invitation to his house.

When she arrived, Appellant showed Ms. E.F. around the house, where she met Appellant's roommate, SN V.P., and a few other visiting servicemembers. SN V.P. and Appellant were members of the same Coast Guard unit and Appellant was SN V.P.'s supervisor. Later, the roommate said he was going out to purchase alcohol and offered to get some for Ms. E.F. She declined, but after returning, he and Appellant suggested she take shots of liquor with them. She initially declined, but after they repeatedly implored her and showed her how to take a shot, she consumed three shots.

After a couple attempts to kiss Ms. E.F., which she rebuffed, Appellant suggested the two of them get into his hot tub. Ms. E.F. demurred that she did not have a bathing suit, but Appellant said she could wear her bra and underwear. Ms. E.F., by then feeling the effects of alcohol and vertigo, agreed, but testified she felt pressured and believed she had no choice but to stay

---

[3] We heard oral argument on AOE II and the specified issues. Judge Parker did not participate, having joined the Court after oral argument, but had access to the audio recording.

[4] Regarding AOE VIII, *see United States v. Anderson*, 83 M.J. 291 (C.A.A.F. 2023) (rejecting the contention that a military accused has a right to a unanimous verdict).

because she was not in a condition to drive. As she walked toward a door leading to the hot tub, Appellant "proceeded to come forward and take off my clothes." R. at 285.

Appellant picked Ms. E.F. up and put her into the hot tub. Although she sat on the opposite side, Appellant repeatedly tried to pull Ms. E.F. onto his lap. Each time, she pushed him away, went back to the opposite end of the tub, and tried to carry on a conversation. After a while, Appellant got out of the hot tub, pulled Ms. E.F. out, and placed her onto the ground. As they headed back inside, he gave her a towel, which she wrapped around herself. Without asking, he then removed the towel and removed her bra and underwear. As he was doing this, he glided his hand down with open palms and touched her breasts and buttocks. As this happened, Ms. E.F. tried to cover herself with her arms and "was feeling really uncomfortable," that if she "tried to do anything, I wouldn't get anywhere, I felt I would get hurt." R. at 290.

Ms. E.F. put the towel back around herself, and Appellant "tried to start pushing me to go upstairs." R. at 292. She testified she was not feeling well and needed to lie down, so she walked upstairs with his assistance and lay down in a fetal position on a rug in the bedroom. Although Ms. E.F. alleged that Appellant then picked her up, placed her onto the bed, and sexually assaulted her, the members acquitted Appellant of this.

As well as charging Appellant with sexual assault and abusive sexual contact under Article 120, UCMJ, the Government charged an unenumerated offense under Article 134, UCMJ, for providing alcohol to a person under the age of 21. The original specification alleged that Appellant *knew* Ms. E.F. was under the age of 21. However, facing a pretrial Defense motion for the military judge to instruct accordingly, trial counsel instead, over objection, struck the knowledge language from the specification, without substitution, and successfully argued that the offense required only recklessness.

## II. Failure to State an Offense
### A. Standard of Review

Appellant did not raise at trial his claim that the specification alleging he provided alcohol to a person under 21 years of age in violation of Article 134, UCMJ, fails to state an

offense. But before deciding how, if at all, this impacts the standard of review, we must consider recent amendments to the Rules for Courts-Martial. These amendments have altered the landscape for when claims of failure to state an offense are waived (meaning extinguished, generally barring relief on appeal), forfeited (meaning due to a failure to timely assert a right, relief is available only under a heightened plain error standard), or neither (meaning we review the matter de novo). *See United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (explaining the distinction between waiver and forfeiture).

Prior to 2018, R.C.M. 905 delineated issues that, if not raised either before the entry of pleas or adjournment, were waived by operation of the rule. R.C.M. 905(b), (e), *Manual for Courts-Martial, United States* (*MCM*) (2012 ed.) (R.C.M. 905(b), (e) (2012)). Some older cases, which tended to conflate waiver with forfeiture, were inconsistent in applying this Rule, but the United States Court of Appeals for the Armed Forces (CAAF) recently interpreted the pre-2018 Rule as meaning what it said: issues included in the list were *waived* by operation of law, not forfeited. *United States v. Hardy*, 77 M.J. 438, 441 (C.A.A.F. 2018).[5] Failure to state an offense was expressly excluded from R.C.M. 905's waiver provisions, but, if not raised at trial, it was still deemed forfeited and reviewed for plain error. R.C.M. 905(b)(2), (e) (2012); *United States v. Tunstall*, 72 M.J. 191, 196 (C.A.A.F. 2013); *United States v. Ballan*, 71 M.J. 28, 34 (C.A.A.F. 2012).

R.C.M. 905's exclusion of failure to state an offense from its waiver provisions made sense under the old R.C.M. 907, which listed failure to state an offense and jurisdiction as non-waivable bases for dismissal. R.C.M. 907(b)(1)(A) (2012). But in 2016, without altering R.C.M. 905, the President amended R.C.M. 907 to make failure to state an offense waivable. R.C.M. 907 (2016); *MCM* (2016), app. 21, Analysis of Rules for Courts-Martial at A21-57. The effect was that claims of failure to state an offense *could* be waived if done so affirmatively, but not (like most other issues) by operation of law under R.C.M. 905; they could, however, still be forfeited

---

[5] In *United States v. Coleman*, CAAF declined to determine whether *Hardy*'s holding applied to multiplicity claims because, despite *Hardy* having been decided, the Government did not cite *Hardy* or raise the issue of waiver. "Accordingly, we decline to sua sponte raise this issue on the Government's behalf." 79 M.J. 100, 102, n.3 (C.A.A.F. 2019).

if not timely raised. *See, e.g., United States v. Sorrells*, No. 201700324, 2019 WL 1220725, at *2 (N-M. Ct. Crim. App. Mar. 13, 2019) (unpub.).

This changed again in 2018 when R.C.M. 905 was amended. The new Rule—which applies here—provides, in pertinent part:

> (b) *Pretrial motions*. . . . The following must be raised before a plea is entered:
> . . .
>> (3) Defenses or objections based on defects in the charges and specifications (*other than any failure to show jurisdiction or to charge an offense*, which objections shall be resolved by the military judge at any time during the pendency of the proceedings);
> . . .
> (e) *Effect of failure to raise defenses or objections*.
>> (1) Failure by a party to raise defenses or objections or to make motions or requests which must be made before pleas are entered under subsection (b) of this rule *forfeits* the defenses or objections *absent an affirmative waiver*. The military judge for good cause shown may permit a party to raise a defense or objection or make a motion or request outside of the timelines permitted under subsection (b) of this rule.
>>
>> (2) Other motions, requests, defenses, or objections, *except* lack of jurisdiction or *failure of a charge to allege an offense*, must be raised before the court-martial is adjourned for that case. Failure to raise *such other motions*, requests, defenses, or objections, shall constitute *forfeiture*, absent an affirmative waiver.

R.C.M. 905 (2019) (emphasis added).

This raises a question we have not yet had occasion to consider: As amended, does R.C.M. 905 exempt claims of failure to state an offense from its deadlines for when claims must be raised and the consequence of forfeiture when these deadlines are not met?

A plain reading of the new Rule indicates that is exactly what it does. Although failure to state an offense is now waivable, R.C.M. 905—which is now a forfeiture rule rather than a waiver rule—continues to single it and jurisdiction out for special treatment. When delineating deadlines for raising issues, it expressly exempts claims of failure to state an offense. R.C.M. 905(b)(2), (e) (2019). There is, therefore, no basis for asserting that claims of failure to state an offense raised for the first time on appeal are untimely. R.C.M. 905(e) is likewise plain that the

consequence of forfeiture applies to listed issues that are not raised in accordance with its timelines—and not to claims of jurisdiction or failure to state an offense. There again is no basis for interpreting the Rule to read claims of failure to state an offense back into the list of issues that are forfeited if not raised at trial.

The Government, however, posits that *United States v. Day*, 83 M.J. 53 (C.A.A.F. 2022), is recent, binding authority that claims of failure to state an offense raised for the first time on appeal are forfeited and reviewed for plain error. The Government is correct that CAAF applied forfeiture to a claim of failure to state an offense when, one can deduce, the new R.C.M. 905 should have applied. *Id*. at 54–55, 57. *Day*, however, does not mention R.C.M. 905, let alone address whether the new Rule modified this standard of review. The court instead repeated the existing—and apparently unchallenged—premise that absent an objection at trial, claims of failure to state an offense are reviewed for plain error. But it cited *Tunstall*, 72 M.J. at 196—a case that preceded the amendment to R.C.M. 905. *Id*. at 57. The reason the court did not cite R.C.M. 905 or address its impact on the standard of review is simple: neither party briefed the changes to R.C.M. 905 or raised the issue of whether under it, forfeiture no longer applied.[6] CAAF is reticent to sua sponte raise such issues on a party's behalf. *United States v. Coleman*, 79 M.J. 100, 102, n.3 (C.A.A.F. 2019). Therefore, the question of whether the revised R.C.M. 905 altered the standard of review articulated in *Tunstall* has been neither presented to nor decided by CAAF and is for us to resolve as a matter of first impression.

We hold that the revised R.C.M. 905 exempts claims of failure to state an offense from the consequence of forfeiture if not raised during trial. Accordingly, we review claims of failure to state an offense, whether raised at trial or not, de novo.

**B. Law**

In assessing the sufficiency of a specification, we start with the knowledge that the military is a notice pleading jurisdiction. *United States v. Sell*, 3 C.M.A. 202, 206, 11 C.M.R. 202, 206 (1953). A specification is "a plain, concise, and definite statement of the essential facts

---

[6] The parties' briefs are available at: https://www.armfor.uscourts.gov/newcaaf/calendar/202210.htm#25 (last visited 5 October 2023).

constituting the offense charged." R.C.M. 307(c)(3). The Supreme Court found that a specification is sufficient if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Fosler*, 70 M. J. 225, 229 (C.A.A.F. 2011). In the military context, "when an accused servicemember is charged with an offense at court-martial, each specification will be found constitutionally sufficient only if it alleges, *either expressly or by necessary implication*, every element of the offense, so as to give the accused notice of the charge against which he must defend and protect him against double jeopardy." *United States v. Turner*, 79 M.J. 401, 403 (C.A.A.F. 2020) (internal citations and quotations omitted) (emphasis added); *see also,* R.C.M. 307(c)(3). In particular:

> The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

*Sell*, 3 C.M.A. at 206, 11 C.M.R. at 206. Additionally:

> The lens through which [a] Court evaluates the sufficiency of a specification differs depending on when counsel first raised the issue. When a charge and specification are first challenged at trial, we read the wording narrowly and will only adopt interpretations that hew closely to the plain text. Hewing closely to the plain text means we will consider only the language contained in the specification when deciding whether it properly states the offense in question. However, a flawed specification first challenged after trial is viewed with greater tolerance than one which was attacked before findings and sentence. Under the latter scenario, the specification will be viewed with maximum liberality.

*Id.* (internal citations and quotations omitted). Here the sufficiency of the specification was first raised on appeal.

### C. Analysis

This case presents two issues regarding the sufficiency of the specification. First, in AOE II, Appellant argues that the specification is "fatally defective because it does not allege a crime or words of criminality." Appellant's Br. at 1. Second, the Court specified two issues regarding the omission of a mens rea from the specification. We address the omission of a mens rea first.

8

*1. Omission of Mens Rea*

When an offense has a required mens rea, it is an essential element that must not only be proven, but pleaded in charging documents. *Elonis v. United States*, 575 U.S. 723, 734 (2015) ("Although there are exceptions, the 'general rule' is that a guilty mind is 'a necessary element in the *indictment and* proof of every crime.' " (quoting *United States v. Balint*, 258 U.S. 250, 251 (1922)) (emphasis added); *Fosler*, 70 M.J. at 229 (discussing the requirement for a specification to allege every element of the offense expressly or by necessary implication); *United States v. Berrios-Centeno*, 250 F.3d 294, 297 (5th Cir. 2001) ("By any standards, the *mens rea* element is 'material' or 'essential,' " and therefore must be sufficiently alleged in the indictment.); R.C.M. 307(c)(3) Discussion (G)(i) ("If a specific intent, knowledge, or state of mind is an element of the offense, it *must* be alleged.") (emphasis added).

The specification, as originally drafted, alleged that Appellant acted "knowingly" because he provided alcohol to "Ms. E.F whom he knew to be under the age of 21." App. Ex. II at 57. Prior to arraignment, however, the Government eliminated the requirement that he acted knowingly by deleting the phrase "whom he knew to be" without substituting any other language to provide a mens rea. Def. Supp. Mot. for Appropriate Relief: Request for Findings Instruction in Mens Rea, App. Ex. 30, at 1. This presents a complication, but one easily resolved.

Technically and without further context, this change by the prosecution potentially rendered the specification defective; however, this technical[7] defect was cured through motion practice[8] when all parties agreed that the applicable mens rea is reckless as determined by *United States v. Tucker*, 78 M.J. 183, 184 (C.A.A.F. 2018). The parties then tried the case based on this mens rea and the military judge instructed the members accordingly. Consequently, any error by not expressly pleading a mens rea of reckless was clearly harmless beyond a reasonable doubt

---

[7]*United States v. Stefan*, 784 F.2d 1093, 1102 (11th Cir.) (despite omitting the word "willfully"—an "essential element of the offense"—the court upheld an indictment for making a false statement because "practical, rather than technical considerations govern the validity of an indictment").

[8] Appellant originally argued that the removal of the phrase, "whom he knew to be" from the specification was a major change, but after the military judge denied that motion both the Appellant and government agreed that the standard was reckless.

because the case was tried as though the specification contained the word reckless. Further, following the rule adopted by our higher court "of liberally construing specifications in favor of validity when they are challenged for the first time on appeal," *United States v. Watkins*, 21 M.J. 208, 209 (C.M.A. 1986), we find there is no "clear showing of substantial prejudice to the [Appellant]—such as a showing that the indictment is 'so obviously defective that by no reasonable construction can it be said to charge the offense for which conviction was had." *Id.* at 210 (quoting *United States v. Thompson*, 356 F.2d 216, 226 (2d Cir. 1965), *cert. denied*, 384 U.S. 964 (1966)).

### 2. Failure to Allege a Crime or Words of Criminality

Appellant incorrectly argues that the specification fails to allege a crime. As recognized by our higher court, "Article 134 would appear to encompass two general classes of conduct: first, that which is or generally has been recognized as illegal under the common law or under most statutory criminal codes; and second, that which—however eccentric or unusual—would not be viewed as criminal outside the military context." *United States v. Davis,* 26 M.J. 445, 448 (C.M.A. 1988). Based upon federal law,[9] state criminal codes in all fifty states and the District of Columbia,[10] case law (not solely limited to military case law),[11] and longstanding military custom, Appellant's case clearly falls in the former category of a conduct generally recognized as illegal across the entire nation—as such he was on notice that Article 134 prohibited his conduct and was subject to criminal sanction. The specification therefore does allege a crime by alleging conduct "which is or generally has been recognized as illegal." Tellingly, Appellant did not argue he lacked fair notice of the criminality of his actions, but rather argued solely that the specification as drafted was defective. Appellant's Reply Br. at 7-8.

This is important. Appellant concedes he knew his conduct could be criminalized under Article 134, *i.e.*, he was on notice that the conduct alleged in the specification was generally recognized as criminal. Consequently, Appellant surely also possessed "the required notice of

---

[9] 28 U.S.C. § 158.
[10] Federal Trade Commission Consumer Advice, Alcohol Laws by State (September 2013), https://consumer.ftc.gov/articles/0388-alcohol-laws-state, last visited 5 October 2023.
[11] *See, e.g., United States v. Tucker*, 78 M.J. 183 (C.A.A.F. 2018).

what an accused must defend against." *United States v. Jones*, 68 M.J. 465, 472 (C.A.A.F. 2010). Because the sufficiency of the specification was not raised at trial, this alone would be enough reason to sustain the sufficiency of this specification given the standard "of liberally construing specifications in favor of validity when they are challenged for the first time on appeal," *United States v. Watkins,* 21 M.J. 208, 209 (C.M.A. 1986). Since we have taken up this case *en banc*, have been urged to overrule *United States v. Tevelein*, 75 M.J. 708 (C.G. Ct. Crim. App 2016)*,* our precedent on this issue, and are divided ourselves over the issue, a more detailed inquiry is warranted.

Having conceded that he was on notice that his conduct could be criminalized under Article 134, Appellant instead raises a formalistic argument: the specification must allege words of criminality by which the Appellant specifically means it must include either the word wrongful or unlawful. Appellant's Br. at 20-28. This argument raises form over substance and is inconsistent with the nature of Article 134, the concept of notice pleading, the statutory text, the *MCM*, military case law, and constitutional due process requirements as described more fully below.

A formalistic requirement that all Article 134 specifications must include the word unlawful or wrongful is contrary to the nature of Article 134. Article 134:

> is an expansive, flexible, and amorphous prosecutorial tool within the military justice system with no analog in Title 18. Intended to serve as a means for a military commander to meet and enforce the exigencies of military discipline, it 'requires a finding that (1) the accused did or failed to do certain acts,' and (2), proof that Appellant's conduct was 'to the prejudice of good order and discipline in the armed forces,' or 'of a nature to bring discredit upon the armed forces,' or a 'crime or offense not capital.' "[12]

*United States v. Rice,* 80 M.J. 36, 41 (C.A.A.F 2020) (quoting *Manual for Courts-Martial, United States* (2008 ed.) (MCM), pt. IV, para. 60.b (internal citations omitted).

---

[12] Through clause 3 Article 134 also criminalizes noncapital crimes or offenses that violate federal civilian law including law made applicable through the Federal Assimilative Crimes Act, but Appellant was not charged with an offense under clause 3 so this opinion will not further address clause 3.

"Thus, in contrast to most criminal statutes that speak in terms of *prohibited acts,* clause[s] [1 and] 2 of Article 134 speak [] in general terms of acts which create a *prohibited effect*." *United States v. Vaughan,* 58 M.J. 29, 40 (Crawford, C.J., concurring in the result) (emphasis in original). While the President through Executive Order has enumerated the elements for certain Article 134 offenses, Congress did not limit Article 134 to those offenses enumerated by the President in order to provide flexibility to "meet and enforce the exigencies of military discipline." *Rice*, 80 M.J. at 41. For these unenumerated offenses, a specification must simply allege acts (or failures to act) that have the effect of being prejudicial to good order and discipline or service-discrediting. This is not to say that any conduct is criminalized under Article 134; due process notice requirements limit what can be charged.

A formalistic requirement to always include unlawful or wrongful in an Article 134 specification is highly inconsistent with the nature of a category one *Davis* specification. Because a category 1 *Davis* specification alleges conduct that is generally recognized as criminal, there is no need to include additional words of criminality such as wrongful or unlawful.[13] This legal conclusion stems from logic and common sense—if conduct is generally recognized as criminal, the addition of words of criminality add nothing to the specification as the conduct itself, as described in the specification, is criminal and thereby establishes "the required notice of what an accused must defend against." *Jones,* 68 M.J. at 472. Furthermore, this conclusion is consistent with *Davis*, because in describing the two categories, the *Davis* court found, albeit in *dicta*, that "[w]ith respect to conduct that, wherever it occurs, is generally viewed as illegal, it can be argued that a specific allegation of 'wrongfulness' or 'unlawfulness' is surplusage." *Id.*[14] By contrast, *Davis* category two specifications likely will require pleading either unlawful or wrongful because such specifications criminalize otherwise lawful conduct due to the unique military interests.

A formalistic requirement to always include unlawful or wrongful in an Article 134 specification is inconsistent with the concept of notice pleading. The nature of notice pleading

---

[13] The MCM instead uses the phrase "words indicating criminality" in the discussion to R.C.M. 307(c)(3) Discussion (G)(ii), but notes that such words are only required when the alleged act is not itself an offense.

[14] The *Davis* court did not further elaborate as the court found the facts of that case fell into category 2 where the acts were only criminal in the military context.

overlaps with most of the constitutional due process requirements for drafting a specification. The Fifth Amendment provides that no person be deprived of their liberty without due process of law. U.S. Const. amend. V. The Sixth Amendment provides that due process requires an accused to "be informed of the nature and cause of the accusation." U.S. Const. amend. VI. *Fosler* articulated that in the context of the military's notice pleading jurisdiction, a specification is constitutionally sufficient if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Fosler*, 70 M. J. at 229 (quoting *Hamling*, 418 U.S. at 117). There is no doubt that Appellant could raise his conviction to bar a future prosecution for the same offense, so the specification is sufficient if it contains the elements of the offense charged and fairly informed the accused of charge Appellant needed to defend against. The specification sufficiently provided Appellant notice of both.

As previously stated, the statutory text and the *MCM* provide just two elements for an unenumerated Article 134 offense: "that (1) the accused did or failed to do certain acts, and (2), proof that Appellant's conduct was to the prejudice of good order and discipline in the armed forces, [or] of a nature to bring discredit upon the armed forces." *Rice,* 80 M.J. at 41 (cleaned up). Neither the statutory text nor the *MCM* contains a requirement that the word unlawful or wrongful be included in the specification. Article 134, UCMJ; *MCM* part IV ¶ 91. The specification details Appellant's actions (providing several alcohol beverages to Ms. E.F. a person under the age of 21 in the presence of junior enlisted members) and alleges violation of both clause 1 and clause 2 to meet the terminal element. Appellant was therefore on notice as to both elements. The specification was required to do nothing more.

In his Brief and Assignment of Error, Appellant argues that he "had no notice of the standard under which the criminality of his conduct was measured and was not alerted to possible justifications or defenses." Appellant's Br. at 25. More specifically, he noted that the specification did not allege the existence of an order prohibiting the provision of alcohol to a person under the age of 21 or a reference to Virginia state law. Similarly, in Appellant's Reply

13

Brief, he argued that he had no "notice of the theory under which the criminality of [his] conduct [would] be judged." Appellant's Reply Br. at 9. None of these arguments carry any weight.

First, Appellant was not charged with a violation of an order under Article 92 nor with an assimilated violation of Virginia state law under Article 134. Consequently, the specification was not required to allege either of these things.

Second, "the standard under which the criminality of his conduct was measured" was explicitly alleged; Appellant would be guilty if his conduct was to the prejudice of good order and discipline in the armed forces, or of a nature to bring discredit upon the armed forces.

Third, Appellant's Brief and Assignment of Error provides no legal support for the argument that the specification was required to "alert [him] to possible justifications or defenses." Instead, he inquires whether his conduct would be service-discrediting if it was legal under state law. That question, however, is for the members to decide, not an element of the specification to be alleged, because Appellant was not charged with an assimilated crime under clause 3. *United States v. Vaughan*, 58 M.J. 29, 36 (C.A.A.F. 2003). The omission of either unlawful or wrongful from the specification in no way barred Appellant from raising a legal exception under Virginia law as a defense to his violation of the general prohibition of providing alcohol to a person under the age of 21 years old. Nor did the omission prevent him from presenting evidence on any matter that he felt would provide a defense. In fact, the omission of either unlawful or wrongful did not blind Appellant to the existence of a mistake of fact defense as to Ms. E.F.'s age. The defense presented evidence supporting that defense, and the military judge instructed the members accordingly.

The question of whether his conduct would be service-discrediting if it was legal under state law—a purely hypothetical question because it was not—misapprehends the nature of a *Davis* category 1 offense. A category 1 offense is a crime not because it violates state law, but rather because the conduct described in the specification violates clause 1 and/or clause 2 of Article 134. This distinction matters because Article 134 offenses are military offenses and even otherwise lawful conduct may be "illegal solely because, *in the military context, its effect* is to

prejudice good order or to discredit the service." *Davis,* 26 M.J. at 448 (emphasis in original). In other words, the military nature of an Article 134 offense rests on the intertwined combination of action and effect. *Vaughan*, 58 M.J. at 41 (noting accused cannot be on notice conduct was punishable under Article 134 unless conduct was service-discrediting) (Crawford, C.J., concurring in the result.) This distinction is also significant because as Appellant himself notes, not every violation of state law is service-discrediting (or, we note, prejudicial to good order and discipline.) Appellant's Br. at 25 (citing *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008) ("Not every violation of a state statute is discrediting conduct.")). In other words, when an accused is charged with conduct that is generally recognized as a crime, whether that conduct meets every technical requirement of any given state law is not dispositive of whether the conduct violates clause 1 and/or clause 2.

Two hypotheticals might help illustrate this distinction. For example, if a commanding officer (CO) invited junior enlisted members from his unit to his home and in their presence provided several alcoholic beverages to his 20-year-old daughter and encouraged her to drink to the point where she passed out, the CO could be charged with a specification that detailed his actions and alleged his conduct violated clause 1 of Article 134. After the presentation of evidence at court-martial, members might find that the effect of the specified conduct was prejudicial to good order and discipline despite being lawful under state law because the CO got his underage daughter severely intoxicated in the presence of his subordinates. By contrast, a third class petty officer directed by his chief petty officer to give a soon to be 21-year-old non-rate a beer at a unit morale event might be found by members to not have violated Article 134 because under those circumstances, members could find that the effect of the conduct was not prejudicial to good order and discipline even though it violated state law. The determinative question for members in both cases—assuming they found the alleged conduct proven—is not whether the conduct violated state law, but rather the effect of the conduct on good order and discipline.

Setting aside the purely hypothetical issue of legality under state law, the trial defense team showed they understood the available defenses by their actions despite the omission of unlawful or wrongful. The Defense attempted to cast doubt on whether Appellant or his

roommate provided Ms. E.F. with the alcoholic beverages, and to show Appellant did not know her age or did not recklessly disregard her age, that she was just a month short of 21 years old, that no other enlisted members were present while they were drinking, that Appellant and his roommate lawfully possessed the alcohol, and that this occurred in Appellant's private home, amongst other things. Any of this evidence, alone or in combination, could have persuaded the members that Appellant's conduct was not prejudicial to good order and discipline or service-discrediting. The defense trial team's performance refutes the contention that the specification as drafted failed to alert Appellant to the possibility of justification or defense. Neither would the presence of unlawful or wrongful have alerted them to a specific justification or defense because they are generic terms not linked to any specific justification or defense.

The constitutional requirements of due process, the concept of notice pleading, and the statutory and MCM text all support the position that an Article 134 offense that alleges as its first element conduct that is generally a crime (a *Davis* category 1 offense) does not always require the specification to also plead that the conduct is wrongful or unlawful. Military case law also supports that position. For example, our higher Court found sufficient an unenumerated specification alleging child neglect without harm that did not include either unlawful or wrongful even while stating an "Article 134 offense that is not specifically listed in the *MCM* must have words of criminality and provide an accused with notice as to the elements against which he or she must defend." *Vaughan*, 58 M.J. at 35. The specification was sufficient because elements listed by the military judge during the providence inquiry did "capture the essence of child neglect" based on the military judge's definitions of those elements—definitions that were not contained in the specification itself. *Id*. For example, the specification alleged the accused did neglect her child which the military judge determined to mean culpable negligence rather than simple negligence. *Id*. The Court held that the elements gave the Appellant sufficient notice and that whether the acts or omissions violate Article 134 "depend on the facts as evaluated by the trier of fact." *Id*. at 36. By contrast to *Vaughan* where not all states criminalize child neglect, the mens rea used varies, and the sufficiency of the specification depended in part on terms not defined in the specification, this case provides much clearer notice of what Appellant was required to defend against: he provided alcohol to a person under the age of 21 years old under circumstances that met the terminal element.

Although not involving an Article 134 specification, *United States v. Turner* helps illustrate why alleging unlawful or wrongful was not required in this case. 79 M.J. 401 (C.A.A.F. 2020). *Turner* involved a specification alleging an attempt to commit premeditated murder. The sample specification for "Attempts" under Article 80 includes a requirement to "(*describe offense with sufficient detail to include expressly or by necessary implication every element*)." *Id.* at 404. The specification in *Turner*, however, failed to allege that the attempted killing was "unlawful." *Id*. *Turner* noted the correct test is not whether a specification expressly alleges every element of the predicate offense, but rather that "sufficient specificity is required so that an accused is aware of the nature of the underlying target or predicate offense." *Id.*, quoting *United States v. Norwood*, 71 M.J. 204, 205, 207 (C.A.A.F. 2012) (citing *Bryant*, 30 M.J. 72; *United States v. Resendiz-Ponce*, 549 U.S. 102 (2007); *Wong Tai v. United States*, 273 U.S. 77 (1927)). Federal indictments work the same way. *United States v. Lazarenko,* 564 F.3d 1026 (9th Cir. 2009). When the former Prime Minister of Ukraine was convicted of money laundering, wire fraud, and interstate transportation of stolen property for transferring funds through the United States he acquired through crimes in the Ukraine, he argued that his indictment was deficient because it did not contain a necessary element: the Ukrainian law he violated. *Id*. at 1033. The Ninth Circuit disagreed. Looking to its general precedent on indictments, the court found that when bringing money laundering charges, for example, "the government need not allege all the elements of the 'specified unlawful activity,' " *i.e.*, the underlying offense. *Id*. Appellant admitted he had notice that his conduct was potentially criminal, therefore the specification provided sufficient detail to make him aware of the nature of the crime underlying the Article 134 charge.

Other military cases have also found sufficient specifications that failed to allege wrongfulness or other words of criminality. *See United States v. French*, 31 M.J. 57, 60 (C.M.A. 1990) (despite lacking express words of criminality, the court upheld an Article 134 specification alleging the defendant "did orally communicate . . . indecent language" by asking a girl under the age of 16, "if [Appellant] could climb into bed with her" because "[a]s a whole … the language certainly conveys an indecent message."); *United States v. Brecheen*, 27 M.J. 67, 68–69 (C.M.A. 1988) (despite omitting the element of "wrongfulness," the court upheld an Article 112 specification alleging the defendant attempted to distribute a controlled substance, because "it is

well recognized by this Court and federal courts in general that the essential elements of a crime need not be expressly alleged so long as they may be found by reasonable construction of other language in the challenged specification."); *United States v. Bunch*, 3 C.M.A. 186, 189, 11 C.M.R. 186, 189 (1953) (despite lacking express words of criminality, the court upheld an Article 134 specification alleging the defendant possessed property belonging to another, because the specification "implicitly contain[ed] a charge that the act committed by the accused was itself an offense and therefore unlawful and wrongful."); *United States v. Macko*, 82 M.J. 501, 503 (N-M. Ct. Crim. App. 2021), review denied, 82 M.J. 235 (C.A.A.F. 2022) (despite omitting the specific element of "wrongfulness," the Navy-Marine Court of Criminal Appeals upheld an Article 134 specification alleging the production of child pornography, because "the word 'wrongfully' [was] necessarily implied by the specification's allegation that Appellant produced 'digital pictures of a minor engaging in sexually explicit conduct.' "); *United States v. Hoffmann*, No. 201400067, 2020 WL 3045674, at *9 (N-M. Ct. Crim. App. June 8, 2020) (unpublished) (despite not including the word "wrongfully," the court upheld a novel Article 134 specification for enticing an individual under the age of 18, reasoning that "in evaluating whether the specification contains words of criminality, we are not looking for 'magic' words. The mere failure to include the word 'wrongfully' does not necessarily render a specification invalid."). Military case law therefore supports the proposition that not all Article 134 offenses require the inclusion of either wrongful or unlawful.

Appellant also urges us to overrule *United States v. Tevelein*, 75 M.J. 708 (C.G. Ct. Crim. App. 2016). We decline to do so, but we also choose not to merely rely on *stare decisis* in reaching our result. Nevertheless, we feel it necessary to address *Tevelein* because some view it to establish a bright line rule that words of criminality are never required. *Tevelein* recognized that "[w]hat remains elusive in military justice jurisprudence is precisely which circumstances require additional words of criminality. We need not decide that issue here." *Id*. at 711, n.21. Instead, in *Tevelein* we applied the *Sell* test to the facts and circumstances of the case. Notably, this was a guilty plea in which Tevelein never challenged the sufficiency of the specification, including on appeal. Furthermore, Tevelein "entered into a stipulation of fact, and admitted that he used Spice to get high, for its mind-altering effects, that he expected the effects to be similar to that of marijuana, a Schedule 1 controlled substance, that he used Spice with other Coast

Guard members, and in front of other Coast Guard members, in Coast Guard leased housing, and that he used Spice in part because he knew it would not be detected by an urinalysis test." *Id*. at 712-13.

These stipulated facts well established that Tevelein's use of Spice was unlawful. Like *Davis* and *Vaughan,* based upon the specific facts of the case, we concluded that Tevelein had sufficient notice that "his conduct was punishable," that the specification "apprise[d] [him] of what he needed to defend against," and that it was not plain error for the military judge to accept his guilty plea. *Id*. at 712, 713. As stated in footnote 21, this was a fact-based opinion rejecting the notion that every Article 134 specification must include words of criminality such as unlawful or wrongful to be sufficient. Thus, *Tevelein* does not establish a bright line rule that the terms "wrongful" or "unlawful" are never required in an unenumerated Article 134 specification. Similarly, this opinion does not draw such a bright line rule. Accordingly, it remains open as to which Article 134 specifications require words of criminality.

While we and our dissenting colleagues agree that Article 134 offenses do not "*always* require particular words of criminality, such as 'wrongfully' or 'unlawfully,' and that, instead, what suffices as words of criminality depends on the nature of each offense," we take different analytical approaches to when such words are required. *United States v. Shafran*, __ M.J. __, No. 1480, slip op. at 38 (C.G. Ct. Crim. App. 26 Feb 2024).

Initially, however, we start from the same premise: the Sixth Amendment requires the specification to provide notice of the elements that the accused must defend against at trial. We also agree that "if the facts alleged in and of themselves describe a violation of unwritten, customary law, nothing further is needed." *Id*. at 34. As detailed above, we believe that the facts alleged do describe a violation of unwritten, customary law as evidenced by military case law, as well as state and federal law; therefore, neither wrongfully nor unlawfully is required. Our colleagues go further with their analysis, opining that such words are required when "more information" is needed to show whether the acts alleged might or might not fall under the prohibition at issue. *Id*. As detailed above, there are no facts that would *per se* take Appellant's conduct outside the prohibition against providing alcohol to a person under the age of 21. This is

19

in part because factually his conduct did not fall under any exception under Virginia state law, but more importantly because whether Appellant's conduct is criminal ultimately depends not on any such state law exceptions, but rather whether his conduct was prejudicial to good order and discipline or service-discrediting. As a result, more information was not required to provide Appellant his constitutionally required notice of what he had to defend against.

Our dissenting colleagues alternatively opine that "if a specification 'excludes any possibility that [an] accused's behavior was accidental or that the conduct charged could reasonably be interpreted as innocent,' then omitting words of criminality like 'wrongfully' is 'not fatal.' " *Id*. at 39 (quoting *United States v. Gaskin*, 12 C.M.A. 419, 421, 31 C.M.R. 5, 7 (1961). The specification in *Gaskin*, however, did not include "unlawfully" and the Court noted the inclusion of the words "wrongfully" or "unlawfully" were a "mere formality" where a specification "implicitly contain[s] a charge that the acts there set out were in themselves criminal." *Gaskin*, 12 C.M.R. at 421, 31 C.M.R. at 7. The specification at issue here at least implicitly charges acts that are criminal. Excluding any possibility of innocence is not required to provide the Appellant adequate *notice* of what he must defend against, nor is it required by the relevant case law.

Specifications are not required to exclude any possibility of innocence. The Supreme Court has long held that an indictment "need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere, and that it is incumbent on one who relies on such an exception to set it up and establish it." *McKelvey v. United States*, 260 U.S. 353, 357 (1922); *Dixon v. United States*, 548 U.S. 1, 13 (2006) ("Duress, like the defense at issue in *McKelvey*, is an excuse that allows an exception from liability."); *Evans v. United States*, 153 U.S. 584, 590 (1894) ("Neither in criminal nor in civil pleading is it required to anticipate or negative a defense."). The Supreme Court has also held that an indictment that "recites the necessary elements of an offense" is not insufficient because "it does not allege facts that themselves demonstrate the availability of a constitutional privilege." *United States v. Sisson*, 399 U.S. 267, 288 (1970) ("an indictment, in order to be sufficient, need not anticipate affirmative defenses"). Our colleagues maintain that the inclusion of wrongfully or unlawfully is a necessary element, but that is not consistent with the case law. Although

20

determining "whether an exception in a criminal statute creates an element or an affirmative defense is not an exact science," courts continue to apply the rule in *McKelvey* where exceptions to general provisions are not elements given that this "longstanding convention is part of the backdrop against which Congress writes laws." *United States v. Rafiekian*, 991 F.3d 529, 541-542 (4th Cir. 2021). This is true even where the general provision and the exceptions are in separate subparagraphs of the same statutory provision. *Id*. Here, the exceptions would not come from the same statute, but from state law rather than federal law.[15] Furthermore, the exceptions would not even be explicitly pleaded by inserting wrongfully or unlawfully; at best they would be implied. Consequently, those words cannot be elements of the offense that must be pleaded.

We agree with our colleagues that there are times when "a particular word of criminality, such as 'wrongfully,' may, depending on the nature of the offense, be necessary to fully establish criminality," but this is not such an offense. *Shafran*, __ M.J. __, slip op. at 40. For example, as they note, a specification alleging extortion requires an allegation that the obtaining of the property must be wrongful because the alleged extortionist has no lawful claim to the property. (A member threatening to report his shipmate to their Commanding Officer if the shipmate doesn't return his property is not committing extortion because it is the member's property, not his shipmate's.) No similar requirement is present in an allegation of providing alcohol to a person under the age of 21. A specification must allege that use of a controlled substance is wrongful because the Controlled Substances Act, 21 U.S.C. §§ 801-971, is designed to provide for the lawful use of substances, *e.g.*, in accordance with a prescription from a medical doctor.[16] The Controlled Substances Act is not a general provision criminalizing activity and therefore an allegation of wrongful use is necessary. An enumerated Article 134 specification alleging the possession of child pornography contains an allegation that the possession be wrongful to preclude the unintentional or inadvertent acquisition of child pornography—possibly also to protect trial counsel, defense counsel, and military judges who too often knowingly possess child

---

[15] In Virginia even the exceptions have exceptions. Our colleagues cite *Meija v. Commonwealth* for the proposition that a person under the age of 21 must have illegally consumed alcohol and noting the exceptions for legal consumption. Yet even noting the exceptions, an underage person violates the statute if his blood alcohol concentration is greater than 0.02 grams. *Meija v. Commonwealth*, 23 Va.App. 173, 177-178 (1996).

[16] The Controlled Substances Act because with the Congressional finding that many of the drugs it controls "have a useful and legitimate medical purpose and are necessary to maintain the health and general welfare of the American people." 21 U.S.C. § 801(1).

pornography in the course of their duties—but no such protection is required concerning an allegation of recklessly providing alcohol to a person under the age of 21.

Our colleagues also point to the utility of "wrongful" or "unlawful" by reference to *United States v. Rapert*, 75 M.J. 164 (C.A.A.F. 2016). *Rapert*, however, concerns the complicated state of mind for the communication of a threat, something not at issue in this case. Communication is a two-way street: there is the message the speaker intends to communicate and the message received by the listener. In the criminal context, this is further complicated by freedom of speech issues arising under the First Amendment. *Elonis v. United States*, 575 U.S. 723 (2015). The communication must therefore be analyzed under both an objective and a subjective standard. First, would a reasonable listener have understood the communication to constitute a threat. Second, did the speaker subjectively intend to communicate a threat. *Rapert*, 75 M.J. at 169. The fact that the third element of the offense required the communication to be wrongful distinguished this military offense from the civilian offense at issue in *Elonis*. *Id*. Although this saved the specification from the constitutional challenge raised by implying the complicated state of mind at issue, the inclusion of wrongful did not provide the accused with clear notice of what he had to defend against, nor did it provide counsel and the military judge any guidance regarding how to instruct members. The Court itself felt the need to add bracketed language to the elements to clarify how the various mens rea applied. *Id. See also, Counterman v. Colorado*, 600 U.S. 66 (2023) (First Amendment only requires a reckless disregard that a reasonable listener would understand the communication to be a true threat). A similar problem would arise by the inclusion of wrongful or unlawful in the specification in this case; including either word would not provide the accused any additional notice of what he had to defend against, nor would it have provided any clear guidance concerning instructions. Including either word would not add conduct or actions to be proven, a state of mind, or clarity regarding why the acts were unlawful or wrongful.

In the specific context of this alleged offense involving a general state and federal wide prohibition against providing alcohol to a person under the age of 21, there is no defense or exception that must be pleaded as an element, no complicated two-part mens rea, and no wrongfulness component to the alleged crime such as with extortion. For these reasons, we

22

disagree with our colleagues that an allegation of wrongful or unlawful is a required element of the crime that must be pleaded in the specification.

This returns us to the position that when an unenumerated Article 134 offense requires words of criminality remains an open question perhaps unavailing of any simple answer; however, some guidance to counsel seems appropriate. First, when crafting specifications alleging unenumerated Article 134 offenses, counsel must take great care conducting research of the case law and consulting more seasoned practitioners before drafting the specification and then seeking review of the draft. Here, counsel crafted a specification requiring a mens rea of knowing, higher than the minimal standard required by case law. Counsel then struck that language without substituting any other language alleging a mens rea. This was a careless, unforced error. Second, while a specification may expressly or by implication allege the elements of an offense, alleging the elements expressly removes the potential for error. Third, a specification alleging conduct that is generally a crime may not require the inclusion of other words of criminality such as unlawful or wrongful, but the crime may have such an element. For example, extortion is communicating a threat to obtain something of value, but an element of the offense is that the receipt of the object of value must be unlawful. Fourth, if the acts or omissions alleged for element one are generally not a crime, some words of criminality must be alleged in order for the accused to have notice of what he must defend against. Wrongful or unlawful may suffice, but they may not. Consider alleging details that describe why the conduct was not lawful or wrongful. For example, in a specification alleging the use of a substance that is not a controlled substance consider including details such as the use was for the purpose of getting high and to evade detection by urinalysis and in the presence of subordinates.

The specification at issue alleges both the terminal element and conduct that is generally a crime in all fifty states and the District of Columbia. The specification thereby provided him notice of the nature of the offense alleged and what he needed to defend against either expressly or by necessary implication. The specification is sufficient.

### III. Denial of Deferment Request

Appellant correctly notes that the convening authority erred by denying his request to defer confinement without providing an explanation. Our higher court has provided a clear, yet often overlooked, mandate: "When a convening authority acts on an accused's request for deferment of all or part of an adjudged sentence, the action must be in writing (with a copy provided to the accused) and *must include the reasons* upon which the action is based." *United States v. Sloan*, 35 M.J. 4, 7 (C.M.A. 1992) (emphasis added), *overruled on other grounds by United States v. Dinger*, 77 M.J. 447 (C.A.A.F. 2018). This is so appellate courts can provide meaningful judicial review of whether the convening authority abused his discretion in denying the request. *Id.* at 6–7.

The Post-Trial Action indicates that Appellant requested deferment of automatic forfeitures, reduction to E-1, and the balance of adjudged confinement until entry of judgment. It also summarily notes that the convening authority denied this request, but no explanation is provided and neither Appellant's request nor any separate documentation denying the request is included in the record of trial. This was error. *Sloan*, 35 M.J. at 7; R.C.M. 1112(f)(4); Coast Guard Military Justice Manual (COMDTINST M5810.1H), para. 21.E.6.i. Convening authorities and their advisors are cautioned that when denying deferment requests, appropriate documentation, including reasons for denial, must accompany the record of trial so that we can effectively perform our appellate function.

Still, we only grant relief if the error materially prejudiced a substantial right of the accused. Art. 59, UCMJ; *Sloan*, 35 M.J. at 7. Appellant does not articulate any prejudice he suffered, and we discern none. *See United States v. Smith*, 66 M.J. 556, 563 (C.G. Ct. Crim. App. 2008), *aff'd*, 68 M.J. 445 (C.A.A.F. 2010). Accordingly, we decline to grant relief.

### IV. Expert Testimony

Appellant asserts that the Government's expert witness in forensic psychology exceeded the bounds of his expertise and offered impermissible testimony. Because Appellant did not make a timely objection, we review for plain error. To be entitled to relief, Appellant has the burden to show: (1) there was error; (2) the error was plain or obvious; and (3) the error was

materially prejudicial to his substantial rights. *United States v. Brooks*, 64 M.J. 325, 328 (C.A.A.F. 2007).

In its Notice of Expected Use of Expert Testimony, the Government proffered that it intended to call a forensic psychologist for "testimony related to the physiological impacts of the victims' alcohol consumption, her likely blood alcohol concentration at the time of the alleged assault, the impact of alcohol consumption on the victim's memory, and the implications and manifestations of the trauma sustained during and following the alleged assault of the witness." Appellate Ex. II at 27. Based on this proffer, the Defense lodged objections and the military judge conducted a *Daubert* hearing.[17]

When testifying at trial, Dr. A.H. strayed significantly from the proffer and what was addressed during the hearing. After reviewing factors that can affect a person's memory, trial counsel asked if Dr. A.H. could explain Ms. E.F.'s "spotty, intermittent memory and her inability to respond to sexual activity . . . [.]" R. at 617. Dr. A.H. responded:

> At that time, with all these factors at play that we just talked about, she may have been, again, there's no way to know this for certain. She may have been asleep or sleep like state, when a towel or a blanket were removed. That wouldn't been enough then to sufficiently wake her up. . . . And from her testimony, it sounds like she was awake and crying, and they did not respond maybe, as she testified, perhaps because she felt it would be futile to try to respond. But then at some point, when she becomes more awake, she then starts to factor in the totality of everything that happened. And I think that really hits her of what had happened and transpired over the evening.

R. at 617–18.

Later, trial counsel asked whether Dr. A.H. was "able to form an opinion of why this happened or how these factors had affected Ms. [E.F.]" R. at 618. Dr. A.H. replied:

> We start first with her own statement, which was in the detective interview that [Appellant] had been the first guy that had ever asked for her phone number, and I think that that meant something to her, and that she was she was naïve. She was immature. As a 20 year old, she was under the wing of her parents and the watchful eye of her parents. She may have been very trusting to other people in

---

[17] That is, a hearing to determine the admissibility of scientific evidence under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 582 (1993).

uniform, maybe not the same Air Force uniforms that she was accustomed to but pretty close. She may have been overly trusting of people.

R. at 619.

Dr. A.H. also offered, "Having been alcohol naïve, she could have been more prone to being suggestible than she would if she were a little bit older, a little bit more experienced." R. at 619–20. Finally, trial counsel asked Dr. A.H. what "other factors" suggested that Ms. E.F. did not want sexual activity. Dr. A.H. responded by pointing to testimony that Ms. E.F. had a headache, which usually gets worse with physical activity, to Ms. E.F.'s testimony that she sat on the opposite end of the hot tub from Appellant as "another indication that you wanted to avoid sexual activity," and to her testimony that she went to a small carpet in Appellant's room rather than getting on the bed. R. at 620–21.

We, too, find this testimony problematic. It was quite speculative, of untested reliability, and risked invading the province of the members to determine the credibility of the putative victim. M.R.E. 702; *Brooks*, 64 M.J. at 329. Appellant, however, at no point objected to it. His attempt to seek relief for it now fails because even if we assume there was error that was plain or obvious, he has not demonstrated that it materially prejudiced his substantial rights.

First, the bulk of Dr. A.H.'s testimony went toward the sexual assault that allegedly occurred after Ms. E.H. went to Appellant's bedroom (specification 1 of Charge I)—not the serious abusive sexual contact that allegedly occurred before that charged in specification 2 of Charge I. The members acquitted Appellant of the alleged sexual assault (specification 1), indicating that any error in the expert testimony about that offense was not prejudicial. This also indicates that the members gave properly cabined weight to the entirety of Dr. A.H.'s testimony.

Second, rather than objecting to the above testimony, trial defense counsel challenged it through effective cross-examination. Besides emphasizing that Dr. A.H. had not interviewed Ms. E.F. or reviewed any medical records, he elicited that Ms. E.H.'s memory only allegedly got spotty when she got to the bedroom and that besides the possibilities discussed during direct examination, there were other possibilities, such as that a sexual assault did not occur, that there

was consensual activity, or that there was no activity. This put the witness's "could haves" and "may haves" into proper context and was effective impeachment.

Considering the entire record, we are persuaded that the members, heeding the military judge's instructions, gave Dr. A.H.'s testimony only the weight it deserved, determined Ms. E.F.'s credibility themselves using their independent judgment, and based their findings on competent evidence. Accordingly, we find no prejudice and decline to grant relief.

### V. Panel Selection Process

Appellant asserts his equal protection rights were violated when the convening authorities who initially selected, then amended, the panel received and presumptively considered information of prospective members' race and gender. Because Appellant did not raise this claim at trial, he forfeited it. R.C.M. 905(e)(1); *United States v. King*, 83 M.J. 115, 120–21 (C.A.A.F. 2023); *United States v. Gray*, 51 M.J. 1, 49 (C.A.A.F. 1999). He therefore is entitled to relief only if he can establish there was error that was plain or obvious. *United States v. Humphries*, 71 M.J. 209, 214 (C.A.A.F. 2012). "[W]here the law at the time of trial was settled and clearly contrary to the law at the time of appeal—it is enough that an error be 'plain' at the time of appellate consideration.'" *United States v. Harcrow*, 66 M.J. 154, 159 (C.A.A.F. 2008) (quoting *Johnson v. United States*, 520 U.S. 461, 468 (1997)).

Here, prospective members were requested to provide, along with their completed questionnaires, a copy of personnel data sheets containing fields for race, ethnicity, and gender. Most, but not all, of the data sheets included this information.

At the time of Appellant's court-martial, case law provided that convening authorities could use race to select a panel when it was "in favor of, not against, an accused." *United States v. Crawford*, 15 C.M.A. 31, 35 C.M.R. 3 (1964). Further, military appellate courts did "not presume improper motives from inclusion of racial . . . identifiers on lists of nominees for court-martial duty." *United States v. Loving*, 41 M.J. 213, 285 (C.A.A.F. 1994). Recently, however, the United States Court of Appeals for the Armed Forces overturned *Crawford* and held that when "an accused makes a prima facie showing that race played a role in the panel selection process at

his court-martial, a presumption will arise that the panel was not properly constituted." *United States v. Jeter*, 84 M.J. 68, 70 (C.A.A.F. 2023). The court concluded Jeter made a prima facie showing based the circumstances of that case, which included "the racial identifier in the questionnaires, other evidence before the court of criminal appeals, and importantly, the command's understandable belief that the *Crawford* case—which not only authorized but essentially encouraged the consideration of race—was still good law." *Id.* at 74.

In his Additional Assignment of Error, Appellant argues he similarly made a prima facie showing because race and gender information was available to the convening authorities when convening and modifying the panel. There are, however, important distinctions between this case and *Jeter*, the first being that Jeter challenged the panel selection process at trial. Appellant did not and thus faces the higher hurdle of demonstrating plain error.

Second, *Jeter* addressed racial, not gender, identifiers. A plain error setting is not the vehicle for us to extend *Jeter*'s holding, and it is not plain or obvious that the use of gender identifiers in materials available to the convening authority establishes a presumed equal protection violation.

Third, rather than being directly provided questionnaires with racial identifiers, here, the acting staff judge advocate provided the convening authority a package attaching documents that only indicated names, ranks, status, and availability of each nominated member—as well as a roster of every member of the command within 50 miles of the site of the court-martial. Although he indicated the convening authority could also find questionnaires and personnel data sheets by following a hyperlink to a secure website, he advised that "individuals selected as panel members must be those who are best qualified for the duty by reason of their age, education, training, experience, length of service, and judicial temperament." Appellant's Mot. to Attach, encl. (B) at 2. When providing the link to the questionnaires and personnel data sheets, he emphasized, "All personnel should be given equal consideration in light of the above factors *and those factors only.*" *Id*. (emphasis added).

Fourth, in his endorsement back to the staff judge advocate, the convening authority attested that in selecting members, he used the criteria articulated in Article 25, UCMJ, and R.C.M.s 501–505. *Id.* at 65. He continued, "I acknowledge your advice concerning these criteria provided verbally by you and via your memo. I selected panel members who were, in my opinion, best qualified for the duty by reason of their age, education, training, experience, length of service, and judicial temperament, and *used no other criteria*." *Id.* (emphasis added).

Appellant posits that because prior caselaw allowed it, undocumented oral advice must have included that the convening authority could use race as an additional factor in favor of the accused, but this is sheer speculation and contradicted by the evidence available to us.

Under these circumstances, we conclude that *Jeter* is distinguishable from this case and that Appellant has failed to show there was plain error in the panel selection process. Accordingly, we decline to grant relief.

## VI. Decision

We determine that the findings and sentence are correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence are affirmed.

Judges HAVRANEK, PELL, and PARKER concur.

PELL, Judge (concurring):

In joining my colleagues today, I wish to highlight the need for further clarity on the limits of the extraordinary power to charge unenumerated offenses through Article 134, Uniform Code of Military Justice (UCMJ). The Court's disagreement on the doctrine of words of criminality reflects a deeper reckoning on the limits of this authority.

The dissent highlights a "sea change" in our higher court's Article 134 jurisprudence between 2008 and 2011, including requiring a "greater degree of specificity in charging." *United States v. Shafran*, No. 1480, slip op. at 43-44 (C.G. Ct. Crim. App. 26 Feb 2024) (quoting *United States v. Richard*, 82 M.J. 473, 479 (C.A.A.F. 2022) ("What the Government's reliance on these older cases neglects, however, is the sea change that occurred in this Court's Article 134 jurisprudence between 2008 and 2011") and *United States v. Fosler*, 70 M.J. 225, 228 (C.A.A.F. 2011) ("More recent cases have required a greater degree of specificity in charging.")).

This "sea change" noted by the Court above surely continues, and I believe the system of military justice would additionally benefit from further national discussion on the proper role and limits of Article 134 in a military and country that are changing enormously.

BRUBAKER, Judge, concurring in part and dissenting in part:

I fully agree with the Court's resolution of assignments of error (AOEs) I and V through IX and with affirming the abusive sexual contact conviction. I also agree with the Court's analysis and holding regarding the proper standard of review for appellate claims of failure to state an offense under the amended Rule for Courts-Martial 905. I respectfully disagree, however, with the Court's analysis in Part II.C about whether the specification alleging an unenumerated offense under Article 134, Uniform Code of Military Justice (UCMJ), states an offense and with the decision to affirm the finding of guilty to the specification. I would set it aside, thereby mooting the remaining AOEs about the Article 134 conviction (III and IV). Accordingly, I dissent.

It is black-letter law that a specification is "constitutionally sufficient only if it alleges, either expressly or by necessary implication, every element of the offense, so as to give the accused notice of the charge against which he must defend and protect him against double jeopardy." *United States v. Turner*, 79 M.J. 401, 403 (C.A.A.F. 2020) (cleaned up) (quoting *United States v. Dear*, 40 M.J. 196, 197 (C.M.A. 1994)). But this case presents difficult questions that divide this Court: (1) What *are* the elements for the offense at issue, charged under Article 134, but unenumerated, meaning it has not been spelled out, either by Congress or by the President?; (2) What are "words of criminality," and when does an offense require proof of them?; and (3) Does the unenumerated offense of providing alcohol to a person under the age of 21 years require pleading and proof of words of criminality such as "wrongfully" or "unlawfully"?

I would conclude that: (1) the unenumerated offense of providing alcohol to a person under the age of 21 years requires proof not only of a mens rea of at least recklessness, but of words of criminality, specifically, either "wrongfully" or "unlawfully"; (2) even viewed with maximum liberality, the specification failed to allege, expressly or by necessary implication, either of these essential elements and therefore failed to state an offense; and (3) this constitutional error was not harmless beyond a reasonable doubt. I would therefore set aside the conviction.

### I. Elements of Unenumerated Offenses Under Article 134

Determining the elements required to prove a specific offense under clause 1 or 2 of Article 134, UCMJ, requires considering more than just the article's literal language or its two basic elements. In relevant part, Article 134 provides, "Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces [and] all conduct of a nature to bring discredit upon the armed forces . . . shall be punished . . . ." Art. 134, UCMJ. The President—before listing *specific* elements for enumerated offenses under Article 134—explains that, as a general matter, clause 1 or 2 offenses require proof: (1) that the accused did or failed to do certain acts; and (2) that, under the circumstances, the accused's conduct was to the prejudice of good order and discipline or of a nature to bring discredit upon the armed forces. *MCM*, pt. IV, para 91.b.(1), (2).

Read literally, the statutory language and two basic elements would appear to criminalize *any* act or omission that satisfies the second, or terminal, element. But, as this Court has recently emphasized, "*it does not.*" *United States v. Tucker*, 82 M.J. 553, 560 (C.G. Ct. Crim. App. 2022). These two clauses, with origins in pre-Revolutionary British law, have been part of our military law since 1775 and "must be judged, therefore, not *in vacuo*, but in the context in which the years have placed it." *United States v. Frantz*, 2 U.S.C.M.A. 161, 163, 7 C.M.R. 37, 39 (1953). More specifically, the Supreme Court instructs that it is "the longstanding customs and usages of the services"—also known as " 'customary military law' "—that "impart accepted meaning to the seemingly imprecise standards of [Article] 134." *Parker v. Levy*, 417 U.S. 733, 746–47 (1974) (quoting *Martin v. Mott*, 12 Wheat. 19, 35 (1827)). It is only because customary military law imparts accepted meaning to what is now codified as clauses 1 and 2 of Article 134 that they have, for many years, survived vagueness challenges:

> Notwithstanding the apparent indeterminateness of such a provision, it is not liable to abuse; for what those crimes are, and how they are to be punished, is well known by practical men in the navy and army, and by those who have studied the law of courts martial, and the offences of which the different courts martial have cognizance.

*Id*. at 747 (quoting *Dynes v. Hoover*, 20 How. 65, 82 (1857)). *See also, United States v. Rice*, 80 M.J. 36, 41 (C.A.A.F. 2020) ("The exceptionally broad statutory language [of Article 134] and

potential for abuse is balanced, in large part, by [military appellate courts'] duty to constrain it.").

Despite its broad terms, then, the first element of Article 134 cannot be read to encompass *any* act or omission. Instead, a servicemember must have "fair notice" that his or her act or omission is "forbidden and subject to criminal sanction" under this body of law known as customary military law. *United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003) (quoting *United States v. Bivins,* 49 M.J. 328, 330 (C.A.A.F. 1998)). Sources of notice that an act or omission is forbidden under this body of law include "the *MCM*, federal law, state law, military case law, military custom and usage, and military regulations." *Id.*

In the *MCM*, the President provides examples of customary offenses under Article 134 and the proof required for each. *MCM*, pt. IV, paras. 92–108. By doing so, he is not creating substantive criminal law, which is outside his purview, but "merely indicating various circumstances in which the elements of Article 134, UCMJ, could be met." *United States v. Jones*, 68 M.J. 465, 471 (C.A.A.F. 2010). These examples are not exhaustive. "Other violations of customary military law that are *not* listed by the President may likewise be punished under Article 134 '*if sufficient notice of its proscription previously existed in military law*.' " *Tucker*, 82 M.J. at 561 (quoting *United States v. Kick*, 7 M.J. 82, 83 (C.M.A. 1979)).

When charging an unenumerated Article 134 offense, two distinct notice requirements come into play. First, under the Fifth Amendment's Due Process Clause, an accused must have fair notice of criminality at the time of his conduct. *Parker*, 417 U.S. at 752. Separately, under the Sixth Amendment, an accused is entitled at the time of trial to notice of the charges against which he must defend. *Turner*, 79 M.J. at 403. Although both are implicated when assessing the sufficiency of a specification alleging an unenumerated Article 134 offense, each must be analyzed separately. For the former, notice of criminality of conduct "does not necessarily require published notice of the precise wording of the elements." *United States v. Saunders*, 59 M.J. 1, 9 (C.A.A.F. 2003). But, by the time of trial, "[i]n addition to notice that an act is a crime, a person must also have 'fair notice as to the *standard* applicable to the forbidden conduct' against which they must defend." *Id.* (quoting *Vaughan*, 58 M.J. at 31) (emphasis added). This

includes notice of "every element" of the offense. *Turner*, 79 M.J. at 403 (quoting *United States v. Dear*, 40 M.J. 196, 197 (C.M.A. 1994)).

For enumerated Article 134 offenses, the President details specific standards in the form of elements, definitions, and sample specifications. *MCM*, pt. IV, paras. 92–108. An accused charged with an unenumerated offense is no less entitled to notice of the specific applicable standards. *Saunders*, 59 M.J. at 9. But because the standards are not detailed by Congress or by the President, it is incumbent on courts to ascertain applicable standards without such aids. *See, e.g., Vaughan*, 58 M.J. at 35 ("Here, because the charged offense was not listed in the *MCM,* the military judge defined the elements herself . . . . In our view, the elements she listed capture the essence of 'child neglect' as reflected in military custom and regulation as well as a majority of state statutes.").

## II. Whether the Specification States an Offense

Turning to this case, I agree with the majority that Appellant had fair notice that, at the time of his conduct, providing alcohol to a person under the age of 21 years was prohibited. This is amply supported by case law and federal and state law. *See, e.g.*, *United States v. Tucker*, 78 M.J. 183 (C.A.A.F. 2018); Federal Trade Commission Consumer Advice, Alcohol Laws by State (September 2013), https://consumer.ftc.gov/articles/0388-alcohol-laws-state, last visited 31 August 2023. Appellant's Fifth Amendment right to notice of criminality was, therefore, vindicated.

That does nothing, however, to answer whether the Government charged the offense in a manner to vindicate Appellant's Sixth Amendment right to be informed of the charges against him and the essential facts—the elements—required to prove them. On this point, I disagree with the majority. The amended specification alleged that Appellant:

> provide[d] several alcoholic beverages to Ms. E.F., a person under the age of 21, in the presence of other junior enlisted members of the U.S. Coast Guard and U.S. Air Force, and that said conduct was to the prejudice of good order and discipline in the armed forces and was of a nature to bring discredit upon the armed forces.

Charge Sheet.

I would conclude this was insufficient because it omits two elements necessary to prove the customary offense of providing alcohol to a person under the age of 21 years: (1) a mens rea of at least recklessness; and (2) words of criminality, specifically, either "wrongfully" or "unlawfully."

## A. Mens Rea

As the majority notes, a required mens rea is an essential element of an offense that must be pleaded. *Elonis v. United States*, 575 U.S. 723, 734 (2015). The charged offense has a required mens rea of at least recklessness, meaning the Government must prove, at a minimum, that the accused "provide[d] alcohol to someone while consciously disregarding the known risk" that the person was under the legal drinking age. *Tucker*, 78 M.J. at 186. Therefore, to be sufficient, the specification was required to allege, either expressly or by necessary implication, a mens rea of at least recklessness. R.C.M. 307(c)(3); *Turner*, 79 M.J. at 403.

Because the specification was challenged for the first time after trial, we view it with "maximum liberality." *Turner*, 79 M.J. at 403 (quoting *United States v. Bryant*, 30 M.J. 72, 73 (C.M.A. 1990)). Though there is reason to question whether this "maximum liberality" standard continues to apply to an error that is preserved, rather than forfeited, under the amended R.C.M. 905, I believe it does. CAAF has explained that liberally construing specifications challenged after trial:

> is consistent with R.C.M. 905(e), which authorizes the defense to raise an objection to a specification's failure to allege an offense at any time, including after "the court-martial is adjourned." Thus, it is the rule that sets forth when an objection is *timely* for the purposes of waiver, but it is our case law that sets forth the proper *standard* for determining whether a timely motion is *meritorious*.

*Turner*, 79 M.J. at 405, n.4.

Although R.C.M. 905 now sets forth when an objection is timely for the purposes of *forfeiture*, that does not necessarily supersede the maximum liberality standard. A court can review a matter de novo—meaning looking at it anew, without deference to any prior decision and without placing any burden on the accused to show plain error—and yet apply a liberal

standard in its de novo review. This appears consistent with the approach of civilian federal courts. *See, e.g.*, *United States v. Gama-Bastidas*, 222 F.3d 779, 785–86 (10th Cir. 2000).

But even applying this standard, the specification fails. Prior to trial, the trial counsel excised any reference to a mens rea from the specification. Even read with maximum liberality, nothing in the amended specification alleges, expressly or by necessary implication, that Appellant was, at a minimum, reckless as to Ms. E.F.'s age. This was error. Whether or not it was later "cured" in the course of litigation goes only to whether it was harmless beyond a reasonable doubt.

## B. Words of Criminality

1. *In General*

"An Article 134 offense that is not specifically listed in the *MCM must have words of criminality* and provide an accused with notice as to the elements against which he or she must defend." *Vaughan*, 58 M.J. at 35 (citing *United States v. Davis,* 26 M.J. 445, 447–48 (C.M.A.1988)) (emphasis added); *see also, Saunders*, 59 M.J. at 9. So, clearly, the Government in this case was required to allege and to prove words of criminality. Still, that leaves us with vexing questions about what suffices as "words of criminality" and how we determine when a specific word of criminality, like "wrongfully," must be pleaded and proven. As our higher court has itself acknowledged, case law in this area "has been at times unclear." *United States v. Fosler*, 70 M.J. 225, 230 (C.A.A.F. 2011). Still, in my view, we must strive to answer these questions before we can determine whether the specification at bar alleged sufficient words of criminality to state an offense.

This Court has itself vacillated on the issue. In *United States v. Hughey*, it deemed insufficient a specification alleging an unenumerated Article 134 offense because of "the absence of any word of criminality such as 'wrongfully.' " 72 M.J. 809, 813 (C.G. Ct. Crim. App. 2013), *overruled by United States v. Tevelein*, 75 M.J. 708 (C.G. Ct. Crim. App. 2016). Noting that "[t]he fact that certain conduct is prejudicial to good order and discipline does not, in itself, make the conduct criminal and punishable under Article 134," it ruled that the specification lacked either a specific word of criminality such as "wrongfully" or sufficient facts and circumstances

such as were present in *Vaughan* and *Davis* to establish criminality. *Id*. at 813–14 (citing *Vaughan*, 58 M.J. at 35, n.4; *Davis*, 26 M.J. at 449). It also questioned the continued vitality of *Davis* in light of more recent Article 134 cases, such as *Fosler*, 70 M.J. at 230–31. *Hughey*, 72 M.J. at 814.

> In *United States v. Tevelein*, our Court overruled *Hughey*, reasoning:
>
> Central to our earlier opinion was the conclusion that the words of the terminal element, *i.e.*, that conduct was prejudicial to good order or discipline or service discrediting, were not words of criminality. Such a conclusion is not consonant with *Davis*, in which the court equated the terminal element language of Article 134 with words of criminality: "We can see no harm in alleging criminality in terms of the provision of Article 134 which made the conduct wrongful, rather than by using a general allegation that appellant's activity was 'wrongful' or 'unlawful.' "

75 M.J. 708, 711 (C.G. Ct. Crim. App. 2016) (en banc).

The *Tevelein* Court approvingly quoted *United States v. Farence*, 57 M.J. 674, 677 (C.G. Ct. Crim. App. 2002): "Stated differently, the words 'prejudicial to the good order and discipline of the armed forces' are, without more, 'words importing criminality' sufficient to support a specification alleging acts that would not otherwise constitute a crime." *Tevelein*, 75 M.J. at 711. After acknowledging less than clear military case law on the point and, by way of footnote, that "precisely which circumstances require additional words of criminality" "remains elusive," *id.*, n.21, it nonetheless "endorse[d] the principle enunciated in *Davis* and applied in *Farence*, that the words of the terminal element pled in an Article 134 specification constitute words of criminality sufficient to support a specification alleging acts that would not otherwise constitute a crime." *Id*. at 711.

The Government, quite understandably, relies on *Tevelein* to assert that because the specification at issue alleged the terminal element, that by itself establishes criminality. In my view, this notion—that the terminal element by itself fully satisfies the requirement for words of criminality—is so plainly wrong that, even with due deference to *stare decisis*, I would explicitly overrule *Tevelein*. Although considerations outside of the charging document—such as facts

stipulated during the guilty plea inquiry—may have rendered the error harmless, it still was error to omit words of criminality. *See Tevelein*, 75 M.J. at 713 (Bruce, J., concurring in the result).

At any rate, practitioners should take note that all the judges of this Court unanimously agree that *Tevelein* was decided on its facts, that pleading the terminal element does *not* per se suffice as words of criminality, nor do Article 134 offenses *always* require particular words of criminality, such as "wrongfully" or "unlawfully," and that, instead, what suffices as words of criminality depends on the nature of each offense.

But from there, I would take a different analytical approach. Understanding words of criminality, in my view, starts with a simple premise: an accused is entitled to notice, through charging documents, of the ingredients—the elements—necessary to prove his conduct falls within the ambit of the specific prohibition alleged—not *might* fall or *sometimes* falls within it. As the Supreme Court long ago said:

> Offences created by statute, as well as offences at common law, must be accurately and clearly described in an indictment, and if they cannot be, in any case, without an allegation that the accused is not within an exception contained in the statute defining the offence, it is clear that no indictment founded upon the statute can be a good one which does not contain such an allegation, as it is universally true that no indictment is sufficient if it does not accurately and clearly allege all the ingredients of which the offence is composed.

*United States v. Cook,* 84 U.S. 168, 174 (1872).

I acknowledge the majority's point that to be sufficient, a pleading need not envision *every* possible circumstance under which an accused might not be liable for the charged offense. *See, e.g., United States v. Sisson*, 399 U.S. 267, 288 (1970) ("It has never been thought that an indictment, in order to be sufficient, need anticipate affirmative defenses . . . ."). But there is an important distinction between conduct that falls within a criminal prohibition, but an affirmative defense such as insanity or duress may negate criminal intent, and conduct that may not be criminal at all. *See, e.g., United States v. Titterington*, 374 F.3d 453, 456 (6th Cir. 2004) ("In addition to giving general guidance that the elements of a criminal charge must be in the indictment while allegations negating the elements of an affirmative defense need not be, the

Supreme Court has held that a statute-of-limitations claim falls on the affirmative-defense side of the line.")

In my view, if the facts alleged in and of themselves describe a violation of unwritten, customary law—irrespective of potential affirmative defenses—nothing further is needed. If, on the other hand, those acts might or might not fall within the prohibition at issue—depending on missing information—more is needed. For the latter, military courts have long required words of criminality such as "wrongfully." *United States v. Brice*, 17 C.M.A. 336, 340, 38 C.M.R. 134, 138 (1967). As explained in *Brice*:

> [T]he Court, in times past, has held that where a specific action alleges the violation of a particular article of the Code and the acts committed by the accused in and of themselves constitute an offense, the required allegation of wrongfulness . . . is inapplicable. Yet, we have said with equal force that if the act charged does not of itself constitute criminal conduct without an allegation of wrongfulness, the omission thereunder renders the specification legally deficient.

*Id.* (citation omitted).

The *Brice* court went on to hold that a specification alleging attempted sale of marijuana, which at that time was charged under Article 134, failed to state an offense because it did not allege wrongfulness. Its reasoning had nothing to do with the terminal element: "[W]e cannot say with any degree of certainty that the attempted sale of marihuana is *of itself, under all circumstances, a criminal act* sufficient to forego the need of words *denoting a mens rea*." *Brice*, 17 C.M.A. at 341, 38 C.M.R. at 139 (emphasis added).

Conversely, if a specification "excludes any possibility that [an] accused's behavior was accidental or that the conduct charged could reasonably be interpreted as innocent," then omitting words of criminality like "wrongfully" is "not fatal." *United States v. Gaskin*, 12 C.M.A. 419, 421, 31 C.M.R. 5, 7 (1961).

When required, wrongfulness "is independent, not redundant," of other elements of an offense and "obviously relates to *mens rea* (not elsewhere specified amongst the elements) and lack of a defense, such as excuse or justification." *United States v. King*, 34 M.J. 95, 97 (C.M.A.

39

1992). In *Fosler*, the court emphasized that words of criminality such as "wrongfully" are distinct from Article 134's terminal element: "while potentially necessary—depending on the nature of the alleged conduct—such words do not imply the terminal element in the charge and specification." *Fosler*, 70 M.J. at 231.

In the context of the offense of communicating a threat under Article 134, CAAF explains that the word "wrongful":

> is properly understood to reference the accused's subjective intent. "The wrongfulness of [an] act obviously relates to *mens rea* (not elsewhere specified amongst the elements) and lack of a defense, such as excuse or justification." *United States v. King,* 34 M.J. 95, 97 (C.M.A. 1992); *accord United States v. Thomas,* 65 M.J. 132, 134 (C.A.A.F. 2007) (citation omitted) ("The word 'wrongful,' like the words 'willful,' 'malicious,' 'fraudulent,' etc., when used in criminal statutes, implies a perverted evil mind in the doer of the act.").

*United States v. Rapert*, 75 M.J. 164, 169 (C.A.A.F. 2016).[18]

The *MCM*, too, demonstrates that a particular word of criminality, such as "wrongfully," may, depending on the nature of the offense, be necessary to fully establish criminality. First, in explaining how to draft specifications, the Discussion to R.C.M. 307(c)—separate from discussing the requirement to allege the terminal element, R.C.M. 307(c)(3) Discussion, para. (G)(i)—urges the use of words of criminality:

> If the alleged act is not itself an offense but is made an offense either by applicable statute (including Articles 133 and 134), or regulation or custom having the effect of law, then words indicating criminality such as "wrongfully," "unlawfully," or "without authority" (depending on the nature of the offense) should be used to describe the accused's acts.

R.C.M. 307(c)(3) Discussion, para. (G)(ii).

Second, presidential explanations of enumerated Article 134 offenses plainly consider the necessity for words of criminality on a case-by-case basis considering the nature of the offense and do not view them as synonymous with the terminal element. The President, in delineating

---

[18] Communicating threats is now codified as Article 115, UCMJ, including a wrongfulness requirement for two of its subcategories (and maliciousness for the third). Art. 115, UCMJ.

elements and sample specifications for enumerated Article 134 offenses, sometimes includes words of criminality like "wrongfully," "unlawfully," or "dishonorably"[19] and other times does not[20]—depending on the nature of the offense. A survey of these demonstrates that the inclusion of such words depends not on the source of prohibition under customary military law, but on whether the prohibition is universal. When conduct is universally prohibited, no further words of criminality are required. When, on the other hand, there are exceptions excluding the conduct from the prohibition, words of criminality such as "wrongfully" are required to distinguish between criminal and innocent conduct. Some illustrations will make this clearer.

The Article 134 offense of possessing child pornography requires proof that: (1) the accused knowingly *and* wrongfully possessed child pornography; and (2) under the circumstances, the accused's conduct was either prejudicial to good order and discipline in the armed forces or of a nature to bring discredit upon the armed forces. *MCM*, pt. IV, para. 95.b.(1). Note that for this customary offense, wrongfulness is a fact that the Government must prove to satisfy Article 134's first element. Despite a well-known general prohibition against possessing child pornography, the actus reus of possession accompanied by the mens rea of knowledge and proof of the terminal element is not enough. It must also, independent of those elements, be wrongful. The *MCM* explains, "Any facts or circumstances that show that a visual depiction of child pornography was unintentionally or inadvertently acquired are relevant to wrongfulness . . . ." *MCM*, pt. IV, para. 95.c.(12). A person can therefore knowingly—yet innocently under the law—possess child pornography irrespective of impact on good order and discipline or tendency to discredit the armed forces. The added requirement of wrongfulness is not a throw-in: it is a necessary element to separate criminal from innocent conduct.

The Article 134 offense of gambling with a subordinate, on the other hand, has no such requirement. Beyond the terminal element, it requires proof that a petty or noncommissioned officer accused gambled with a servicemember he or she knew was a subordinate and not a noncommissioned or petty officer. *MCM*, pt. IV, para. 103.b. Although the conduct may or may not have the requisite impact to satisfy the terminal element, there is no innocent explanation for

---

[19] *See, e.g., MCM*, pt. IV, paras. 93 (*wrongful* bigamy), 96 (*dishonorable* failure to pay debt), 99 (*wrongful* extramarital conduct), 103 (*unlawful* killing of another through negligence), 108 (*wrongful* straggling).
[20] *See, e.g.*, *MCM*, pt. IV, para. 98 (disorderly conduct), 101 (fraternization).

knowingly gambling with a subordinate, so the requirement for further words of criminality is inapplicable. *See Gaskin*, 31 C.M.R. at 7.

Words of criminality play the same role in congressionally enumerated offenses. For possession of a controlled substance to be prohibited under Article 112a, UCMJ, for instance, the possession must be not just knowing and conscious, but wrongful, which the *MCM* defines in this context as without legal justification or authorization. Art. 112a, UCMJ; *MCM*, pt. IV, para. 50.b.(1), c.(2), (c).(5). *See also, Tucker*, 82 M.J. at 564 (noting that the "concept of wrongfulness is meaningful, for instance, in the context of Article 112a, UCMJ. It generally prohibits the use of controlled substances, but because there may be lawful reasons for such use, criminality also requires wrongfulness, meaning the absence of legal justification or excuse for otherwise-forbidden conduct.") (emphasis omitted). Article 112, on the other hand, prohibits being drunk while on duty. Although an affirmative defense may negate criminality, there is no circumstance where being drunk on duty is permissible under the law, so no further words of criminality are required. Art. 112, UCMJ; *MCM*, pt. IV, para. 49.b.(1).

Although civilian courts do not appear to use the phrase "words of criminality," they, too, recognize that words military courts would categorize as such can describe distinct, essential elements of crimes. *See, e.g., United States v. Enmons*, 410 U.S. 396, 399–400 (1973) (explaining that the term "wrongful" in an extortion statute is not redundant with follow-on terms. "Rather, 'wrongful' has meaning in the Act only if it limits the statute's coverage to those instances where the obtaining of the property would itself be 'wrongful' because the alleged extortionist has no lawful claim to that property."); *Masters v. United States,* 42 App. D.C. 350, 356 (D.C. Cir. 1914), *cited in United States v. Thomas*, 65 M.J. 132, 133 (C.A.A.F. 2007) ("The word 'wrongful' in its legal signification must be defined from a criminal standpoint, since it is here used in a penal statute to define a crime. . . . The word 'wrongful,' like the words 'willful,' 'malicious,' 'fraudulent,' etc., when used in criminal statutes, implies a perverted evil mind in the doer of the act.").

One final illustration, *United States v. Rapert*, evinces the independent work that a word of criminality like "wrongfully" can do. There, the court considered "whether the military

judge's interpretation of what constitutes communicating a threat under Article 134, UCMJ, conflicts with the Supreme Court's recent holding in *Elonis v. United States*, [575 U.S. at 723]." *Rapert*, 75 M.J. at 165. The specific concern was whether the Article 134 offense of communicating a threat suffered from the same infirmity as the prevailing interpretation of the statute at issue in *Elonis*: that it required a mens rea of only negligence, which the Supreme Court deemed inadequate to separate lawful from unlawful conduct. *Id.* at 165, 168. CAAF held that the Article 134 offense did not share this infirmity. The key was that the military offense had, as an element, a requirement that the communication be "wrongful," a word that eliminates innocent explanations, here "that the speaker intended the statements as something other than a joke or idle banter, or intended the statements to serve something other than an innocent or legitimate purpose." *Id.* at 169. This word of criminality, then, is an essential element of proof to "separate[] lawful conduct from unlawful conduct and thereby distinguishes the offense at bar from the one at issue in *Elonis.*" *Id.* at 165.[21]

Therefore, although I join the rest of the Court in concluding that whether an Article 134 offense requires pleading and proof of words of criminality like "wrongfully" depends not on whether the terminal element is pleaded and proven, but on the nature of each offense, I would conclude that if a specification describes conduct that is, without exception, prohibited and excludes the possibility that the described conduct was, under customary military law, lawful, then nothing further is needed. If, on the other hand, a specification describes conduct that, even if true, may or may not be prohibited, then further words of criminality are necessary to separate innocent from prohibited conduct.

*Davis*, 26 M.J. at 448, does not compel a conclusion to the contrary. First, this 1988 case preceded a "sea change" in Article 134 jurisprudence. *United States v. Richard*, 82 M.J. 473, 479 (C.A.A.F. 2022) ("What the Government's reliance on these older cases neglects, however, is the sea change that occurred in this Court's Article 134 jurisprudence between 2008 and 2011.").

---

[21] For further support that a word of criminality such as "wrongful" can be a critical discriminator between lawful and unlawful conduct, *see United States v. Coss*, 677 F.3d 278, 288 (6th Cir. 2012) (concluding that 18 U.S.C. § 875(d) implicitly required a threat to be wrong, and that the indictment was sufficient because it alleged wrongfulness).

"More recent cases have required a greater degree of specificity in charging." *Fosler*, 70 M.J. at 228.

Second, despite *Davis*'s dicta, neither it, nor any other case, holds that whether an unenumerated Article 134 offense requires proof of wrongfulness is determined by which category it falls into: "that which is or generally has been recognized as illegal under the common law or under most statutory criminal codes" or "that which—however eccentric or unusual—would not be viewed as criminal outside the military context." *Davis*, 26 M.J. at 448. Although the court stated that for an offense in the first category, "it *can be argued* that a specific allegation of 'wrongfulness or 'unlawfulness' is surplusage," it went on to note that the conduct fell into the second category and therefore "we need not decide that issue in this case." *Id.* (emphasis added). It then proceeded to consider the "particular facts and surrounding circumstances recited in the specifications"—specifically, a man dressed in women's clothing on a military installation near a barracks or a theater—to conclude that the conduct alleged "virtually always would be prejudicial to good order and discipline and discrediting to the Armed Forces." *Id.* In other words, the court did not apply a categorical approach, and instead looked to the particular acts alleged, which, applying the mores of its time, it found fully expressed criminality under customary military law.

Viewed through a post-*Fosler* lens, *Davis*'s dictum appears, frankly, outdated and unhelpful to the question of how to plead a particular Article 134 offense. *Fosler* instructs that wrongfulness and Article 134's terminal elements are two distinct concepts; one does not imply the other. *Fosler*, 70 M.J. at 230–31. Further, one only need consider the previously-discussed example of possession of child pornography to recognize the fallacy of using *Davis*'s two categories to decide whether a word of criminality like "wrongfully" is required. Possession of child pornography is, undoubtedly, generally recognized as illegal, yet wrongfulness is an essential element, necessary to differentiate innocent from prohibited conduct. This is due to the particular nature of possession of child pornography, not the category into which it falls.

To reiterate, a word of criminality is not an add-on, meaning something akin to "and that's illegal." When required, it is a factual predicate necessary *to make* the conduct illegal. It

indicates that the otherwise-described conduct is not *always* illegal, that there are exceptions or other circumstances rendering the conduct innocent under the law, and places the burden on the Government—with or without the benefit of a presumption—to prove the accused's conduct was within the prohibited rather than the innocent realm.

2. *Whether This Specification Required Words of Criminality*

Applying this framework, I would conclude that the customary offense of providing alcohol to a person under the age of 21 years requires allegation and proof of wrongfulness or unlawfulness, and that because the specification did not allege this expressly or by necessary implication, it was insufficient.

To the extent we can look to state law as a source of notice of what is prohibited under customary military law, *Vaughan*, 58 M.J. at 31, we can look to the same to determine what is *not* prohibited. Although there is a widely-held general prohibition against providing alcohol to those under the age of 21 years, 31 states expressly provide exceptions where doing so is *not* illegal.[22] As an example—merely an example, as it is not any one particular state law being enforced here, but rather customary military law as informed by state laws and other sources collectively—Virginia law carves seven exceptions, ranging from medicinal purposes to providing alcohol in-residence when a parent, guardian, or spouse of the person under 21 is present. Va. Code § 4.1-306.A1, 4.1-200.1–7*; see also, Mejia v. Commonwealth*, 23 Va. App. 173, 175, 474 S.E.2d 866, 867 (Va. Ct. App. 1996) (holding that "illegally" is a distinct and express element of the offense of operating a motor vehicle by a person under the age of 21 after illegally consuming alcohol because "despite the general prohibition against possession and consumption, there exist circumstances under which possession and consumption of alcohol by a person less than twenty-one years of age may be legal," such as medicinal and sacramental possession and consumption.).

---

[22] Furnishing Alcohol to Minors: Maps & Charts, Alcohol Policy Information System (nih.gov), https://alcoholpolicy.niaaa.nih.gov/apis-policy-topics/furnishing-alcohol-to-minors/40/maps-and-charts?accordion-jump-link=furnishing-alcohol-to-minors-exceptions-to-prohibitions-on-furnishing-of-alcohol-to-persons-under-age-21-map-as-of-january-1-2022, last visited 6 Oct 2023.

Based on states collectively carving such exceptions, it cannot be said that under customary military law, providing alcohol to a person under the age of 21 is universally prohibited. Providing alcohol, even knowing or ignoring a known risk the recipient is under the age of 21, may or may not be a prohibited act, depending on the circumstances. In this respect, this customary offense is very like distributing a controlled substance under Article 112a, UCMJ. There are medicinal and other lawful reasons both for providing alcohol to a person under the age of 21 and providing, say, methamphetamines to another. A wrongfulness requirement, in my view, applies with equal force to either.

Evidence that an accused knowingly or recklessly provided alcohol to a person under the age of 21 therefore fails to fully establish a prohibited act. To be prohibited, it must also be demonstrated that such exceptions do not apply. Therefore, to distinguish between criminal and innocent conduct, proof of an added word of criminality, such as "wrongfully" or "unlawfully," is necessary. Because it is an essential fact to prove the offense, it must be pleaded expressly or by necessary implication in the specification, *Turner*, 79 M.J. at 403, in the same fashion as wrongfulness is pleaded as an element in several enumerated Article 134 specifications. *See, e.g., MCM* pt. IV, paras. 95.e, 99.e.[23]

The specification here failed to do so. It did not explicitly allege words of criminality, and although it alleged Appellant provided *several* alcoholic beverages—which may be said to necessarily imply the non-existence of some lawful explanations, such as medicinal or sacramental use—it does nothing, even viewed with maximum liberality, to imply the non-existence of other lawful explanations, such as the presence of a parent, guardian, or spouse. Accordingly, I would hold that the specification under Article 134 fails to state an offense.

---

[23] Pre-*Tevelein* cases such as *United States v. Hewitt*, 61 M.J. 703, 703 (C.G. Ct. Crim. App. 2005) and *United States v. Molina*, 68 M.J. 532, 533 (C.G. Ct. Crim. App. 2009) provide examples where the Government successfully alleged and maintained that an accused *wrongfully* provided alcohol to an underaged person. Having removed any confusion caused by *Tevelein*, charging authorities are urged to carefully consider the *MCM*'s guidance to allege such words of criminality in Article 134 specifications. R.C.M. 307(c)(3) Discussion, para. (G)(i).

### C. Prejudice

Unless the Government can demonstrate harmlessness beyond a reasonable doubt, the remedy for failing to allege all necessary elements is dismissal of the specification. *Turner*, 79 M.J. at 403. To determine harmlessness, "we look to the record to determine whether notice of the missing element is somewhere extant in the trial record, or whether the element is 'essentially uncontroverted.'" *United States v. Humphries*, 71 M.J. 209, 215–16 (C.A.A.F. 2012) (quoting *United States v. Cotton,* 535 U.S. 625, 633 (2002)). Even assuming harmlessness of the failure to allege a mens rea, here, as in *Humphries*, nothing in the trial record reasonably placed Appellant on notice of the wrongfulness element, thereby curing the error. *Id.* at 216–17. Because wrongfulness was not addressed one way or the other in the record, I also cannot say that it was "essentially uncontroverted." Therefore, I would conclude that the Government cannot prove harmlessness beyond a reasonable doubt.

### III. Conclusion

Accordingly, I would set aside the finding of guilty to the specification.

Chief Judge McCLELLAND and Judge HERMAN concur.



For the Court,


Sarah P. Valdes
Clerk of the Court